IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 15-32968 |
| WORLD MARKETING CHICAGO, LLC, et al. ) | Chapter 11 |
| ) | Judge Timothy A. Barnes |
| ) | (Jointly Administered) |
| Debtors/Debtors-in-Possession. ) | |

## NOTICE OF MOTION

TO:   ATTACHED SERVICE LIST:

PLEASE TAKE NOTICE that on the 10th day of November, 2015 at 10:00 a.m. or as soon thereafter as counsel can be heard, I shall appear before the Honorable Timothy A. Barnes, Bankruptcy Judge, in the room usually occupied by him as courtroom 744 in the United States Bankruptcy Court in the Everett McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, or before any other Judge who may be sitting in his place and stead and shall present the **Debtors' Motion For Authority to Sell Assets Outside of the Ordinary Course of Business and Shorten Notice**, a copy of which is attached hereto and herewith served upon you, and shall pray for the entry of an Order in compliance therewith.

AT WHICH TIME and place you may appear if you so see fit.

/s/Jeffrey C. Dan
Crane, Heyman, Simon, Welch & Clar
l35 S. LaSalle St., Suite 3705
Chicago, Illinois 60603
(3l2) 64l-6777

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn on oath deposes and states that he caused a copy of the foregoing Notice and attached Motion to be served via the Court's Electronic Filing System (ECF) and/or electronic mail, on all the parties listed on the attached Service List on the 26th day of October, 2015.

/s/Jeffrey C. Dan

## **SERVICE LIST**

*Served via ECF*

United States Trustee
219 S. Dearborn St., Room 873
Chicago, IL 60604

Kathryn M. Gleason
Office of the U.S. Trustee
219 S. Dearborn St., #873
Chicago, IL 60604

Associated Bank, N.A.
330 E. Kilbourn Ave., #200
Milwaukee, WI 53202

John P. Sieger, Esq.
Paul T. Musser, Esq.
Katten Muchin Rosenman, LLP
525 W. Monroe St.
Chicago, IL 60661

Ryan P. Dahl, Esq.
Devon M. Largio, Esq.
Kirkland & Ellis, LLP
300 N. LaSalle Street
Chicago, IL 60654

Joseph M. Olstein
Olstein Law LLC
10450 S. Western Ave.
Chicago, IL 60643

Mark S. Melickian
Aaron L. Hammer
Michael A. Brandess
Sugar Felsenthal Grais & Hammer LLP
30 N. LaSalle St., Suite 3000
Chicago, IL 60602

Mark Stromberg
8750 N. Central Expy., Suite 625
Dallas, TX 75231

Courtney J. Hull
Kimberly A. Walsh
Bankruptcy & Collections
Division MC 008
P.O. Box 12548
Austin, TX 12548

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| WORLD MARKETING CHICAGO, LLC, et al. ) | Case No. 15-32968 |
| ) | Judge Timothy A. Barnes |
| ) | (Jointly Administered) |
| Debtors/Debtors-in-Possession. ) | |

**DEBTORS' MOTION FOR AUTHORITY TO SELL ASSETS
OUTSIDE OF THE ORDINARY COURSE OF BUSINESS AND SHORTEN NOTICE**

WORLD MARKETING CHICAGO, LLC, WORLD MARKETING DALLAS, LLC, and WORLD MARKETING ATLANTA, LLC, Wisconsin limited liability companies, Debtors/Debtors-in-Possession herein ("Debtors"), by and through their Attorneys, make their Motion pursuant to Sections 363, 1107 and 1108 of the Bankruptcy Code and Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure, for authority to Sell Assets Outside of the Ordinary Course of Business ("Sale"); and in support thereof, state as follows:

**Introduction**

1. On September 28, 2015, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code ("Petition Date").

2. The Debtors are operating their businesses and managing their financial affairs as Debtors-in-Possession. A committee of unsecured creditors has been appointed to serve in this reorganization case.

3. On October 14, 2015, this Court entered orders jointly administering all three bankruptcy cases.

4. The Debtors wish to employ Optimus Financial Services, LLC ("Optimus"), as its financial consultant herein.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. Sections 1408 and 1409.

6. This matter constitutes a "core" proceeding within the meaning of 28 U.S.C. Section 157(b)(2)(A), (M), (N) and (O).

7. The statutory predicates for the relief requested in this Motion are Sections 363, 1107 and 1108 of the Bankruptcy Code.

**Relevant Factual Background**

8. The Debtors are providers of direct mail, fulfillment and critical document solutions that provide processing, fulfillment, lettershop, data and list solutions. The Debtors have clients in the retail, financial services, nonprofit, travel and technology industries.

9. The Debtors were acquired from BH Media Group in September, 2014. The failure to obtain sufficient capital and long-term financing to continue to operate and turn around the business, as well as certain setoffs made by the Lender, caused the Debtors to file these Chapter 11 cases.

10. Associated Bank N.A. (the "Lender") asserts first priority liens and security interests on virtually all of the assets and personal property of the Debtors, which purportedly secure an indebtedness of approximately $1,600,000.00.

**The Offer to Purchase**

11. Through their financial consultants, Optimus Financial Services, LLC ("Optimus"), the Debtors solicited offers for their businesses and assets from third parties in an effort to effectuate a going concern sale at an optimum value. The Debtors also solicited offers to purchase equipment from the Debtors as a liquidation instead of a going concern sale.

12. The Debtors have received and executed an Asset Purchase Agreement with Fryer Investment Group LLC ("Purchaser"), that is subject to approval of this Court, to purchase substantially all of the Debtors' assets, except for accounts receivable, cash and causes of action ("the Offer"). The Asset Purchase Agreement ("Agreement") is attached hereto and

made a part hereof as **Exhibit A**. The Offer is a cash offer of $2,350,000.00 subject to adjustment based upon certain other factors.

13. By this Motion, the Debtors seek authority to sell all of their assets, other than the excluded assets, free and clear of any and all liens, claims and encumbrances pursuant to the terms of the Agreement.[1]

14. The Debtors have excluded the following assets ("Excluded Assets") from the sale: all cash on hand and in banks and cash equivalents and investments; Debtors' bank accounts; the Purchase Price paid by Purchaser; and Debtors' avoidance actions under the Bankruptcy Code and other causes of action.

15. As Optimus has already been in contact with numerous parties interested in the Debtors' assets, Optimus will forward this contract to the parties that have shown interest in the Debtors' assets to solicit higher and better offers.

**Necessity of Sale and Related Relief**

16. The Debtors and their representatives have actively sought offers to purchase the Debtors' assets. The Debtors are confident that all likely buyers of the Assets are aware that the Debtors are seeking a sale and will have an opportunity to submit offers on such Assets. The Debtors believe that a prompt sale of their Assets, pursuant to Section 363(b) of the Bankruptcy Code, presents the most viable option available to maximize value as a going concern for the benefit of creditors. The Debtors have received no other offers to sell their assets as going concerns.

17. Entry of an Order approving the Sale of the Assets is authorized and appropriate under the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business,

---

[1] All liens, claims and encumbrances shall attach to the proceeds of sale.

3

property of the estate." Section 1107(a) of the Bankruptcy Code grants debtors-in-possession the powers of a trustee in respect to various matters including sales under Section 363(b) of the Bankruptcy Code.

   18. This Court's power to authorize a sale under Section 363(b) of the Bankruptcy Code is to be exercised at its discretion, utilizing a flexible, case by case approach. *In re Baldwin United Corp.*, 43 B.R. 905 (Bankr. S.D. Ohio 1984). The key consideration is this Court's finding that a good business reason exists for the sale. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986).

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business. . . . Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtors, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In re Walter*, 83 B.R. 14, 19-20 (9th Cir. BAP 1988), *citing In re Lionel Corporation*, 722 F.2d 1063, 1070-71 (2nd Cir. 1983).

   19. Several sound business reasons exist for selling the Assets at this time:

   a. The Debtors believe that all likely purchasers or other interested parties have had an opportunity to make an offer to purchase the Assets.

   b. The timing of the sale will allow other parties to present higher and better offers to purchase the Assets, thereby maximizing the return to the estate.

   c. The Debtors do not have the financial ability to complete a successful reorganization within a reasonable period of time.

   d. The Debtors are not operating at full capacity due to a lack of cash and the Lender is unwilling to continue to make loans and extend credit to the Debtors to fund business operations over an extended period.

 20. To ensure that the best possible price is obtained, the Debtors will submit the Assets to an auction at the sale hearing should any higher and better offers be received by that time. An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted in good faith. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). The Debtors believe they have received an offer approximating the fair market value of the Assets from Purchaser and are prepared to test that conclusion by an auction. This is geared toward obtaining the highest and best price for the Assets.

 21. The Debtors request that the Order approving the Sale provide that the successful purchaser has acquired the Assets in good faith. Good faith is present here. Purchaser is not affiliated with the Debtors or its creditors in any way. Moreover, no subjectivity in evaluating bids will be at issue. The highest bidder will purchase the Assets. No "special treatment" will be afforded any purchaser. A finding that the purchaser has acted in good faith within the meaning of Section 363(m) of the Bankruptcy Code, therefore, is appropriate.

 22. As mentioned, the Lender asserts security interests in the Assets. There will be sufficient funds received from the sale to pay the Lender's claim in full, once the exact amount of that claim is determined. The prospective counsel for the Committee of Unsecured Creditors has been consulted and has consented to the sale. Thus, the Sale of the Assets will be appropriately free and clear of liens pursuant to Section 363(f) of the Bankruptcy Code; the liens and claims of any entity claiming an interest in the Assets should attach to the sales proceeds with the same validity and priority as exist under state law pursuant to Section 363(e) of the Bankruptcy Code.

 23. Upon the Closing as contemplated and except as provided above, the Debtors propose that the purchaser take title to and possession of the Assets, other than any assigned leases, free and clear of (a) any mortgages, security interests, liens or encumbrances of any kind,

including any administrative expenses or priority claims asserted herein and any interest of a party to a title retention arrangement intended as security, (b) any demands or claims of creditors of, or claims against, the Debtors, (c) any interests of shareholders or other interests in the Debtors, and (d) any person claiming through, by or on behalf of the Debtors, whether such claim, demand, lien or interest be direct or indirect, known or unknown, or claiming that the purchaser is a successor or successor-in-interest or pursuant to any other theory; **provided, however,** that any such purchaser shall not be relieved of liability with respect to obligations accruing under any assumed leases.

24. Furthermore, the Debtors should also be authorized to assume and assign such unexpired leases and executory contracts to the Purchaser that are subsequently designated by the Purchaser pursuant to Section 365 of the Bankruptcy Code. To the extent necessary, the Debtors and the Purchaser will be prepared to establish that any defaults existing under the unexpired leases and executory contracts to be assumed and assigned will be promptly cured ("Cure Amounts") out of the proceeds at closing. Also, to the extent necessary, the Purchaser will be prepared to provide adequate assurances of future performance under the unexpired leases and executory contracts to be assumed and assigned.

25. In order to obtain the highest value for the assets of the Debtors it is necessary to complete the sale in as quick a time as possible. The longer the process continues, the more likely customers will be lost and the value as a going concern will decrease. Therefore, the Debtors request this Court shorten notice to that provided.

**Conclusion**

26. This Motion will allow the Debtors to sell substantially all of their Assets and assume and assign Leases for the benefit of their creditors. The Debtors believe that authorizing the Sale of the Assets described herein is in the best interests of their estates, creditors and other interested parties, will facilitate and expedite the sale process and, in turn, will maintain, preserve and maximize the going concern value of the Assets for the benefit of all creditors in these cases.

WHEREFORE, for the foregoing reasons, WORLD MARKETING CHICAGO, LLC, WORLD MARKETING DALLAS, LLC, and WORLD MARKETING ATLANTA, LLC, Debtors/Debtors-in-Possession herein, pray for the entry of an Order:

    A.    Authorizing the Debtors to sell their assets pursuant to the Asset Purchase Agreement attached as Exhibit A;

    B.    Authorizing the sale free and clear of all liens, claims, interests and encumbrances, with all liens, claims, interests and encumbrances to attach to the proceeds of the sale; and

    C.    Granting such other relief as may be just and appropriate.

        World Marketing Chicago, LLC, World Marketing Dallas, LLC, and World Marketing Atlanta, LLC
Debtors/Debtors-in-Possession

By: /s/ Jeffrey C. Dan
      One of Their Attorneys

**DEBTORS' COUNSEL**:
JEFFREY C. DAN, ESQ. (Atty. No. 06242750)
DAVID K. WELCH, ESQ. (Atty. No. 06183621)
BRIAN P. WELCH, ESQ. (Atty. No. 6307292)
CRANE, HEYMAN, SIMON, WELCH & CLAR
135 S. LaSalle St., Suite 3705
Chicago, IL 60603
(312) 641-6777
W:\Jeff\World Marketing\Sale Motion.MOT.wpd