# EXHIBIT A

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "Agreement") is made and entered into this 13th day of October , 2015, by and between _World Marketing Chicago LLC, World Marketing Atlanta LLC, and World Marketing Dallas LLC, (the "Sellers") and the Fryer Investment Group LLC, of Georgia, Thaddeus Fryer, owner (the "Buyer").

## RECITALS

A.      On September 28 2015, the following companies filed for Chapter 11 Bankruptcy in United States Bankruptcy Court, Northern District of Illinois: World Marketing Chicago LLC (WMC), World Marketing Atlanta LLC (WMA), and World Marketing Dallas LLC (WMD).

B.      Buyer has agreed to purchase certain assets of the Sellers under the terms and conditions set forth below.

C.      Buyer seeks to purchase assets assigned to all three operating locations.

## AGREEMENTS

In consideration of the recitals and the mutual agreements which follow, the parties agree as follows:

1.      Assets to be Purchased. Subject to the terms and conditions set forth in this Agreement, the Buyer agrees to purchase and the Sellers agrees to sell to Buyer at the Closing, all of the assets tangible and intangible of World Marketing Chicago LLC, World Marketing Atlanta LLC and World Marketing Dallas LLC.

2.      Excluded Assets. Notwithstanding any other provisions of this Agreement, the Purchased Assets shall not include Accounts Receivable, Cash and all causes for action for the Sellers or items on the Excluded Assets use. Seller will make arrangements for the receipt of Accounts Receivable payments made after closing.

3.      Exclusion of Liabilities and Obligations. Buyer does not assume any liabilities, obligations or commitments of the Sellers, whether absolute or contingent, known or unknown, except as specifically set forth herein. Seller agrees to work with Buyer to enforce and communicate this agreement.

4.      Purchase Price and Payment. Buyer agrees to pay the amount set forth below for the Purchased Assets.

   a.      Amount. In consideration of the Sellers's sale, assignment and transfer of the Purchased Assets, Buyer shall pay to the Sellers the sum of Two Million Three Hundred Thousand Dollars           ($2,350,000) (the "Purchase Price").

   b.      Payment Terms. Buyer agrees to pay in earnest money in the amount of $70,500 (3.0% of purchase price) put into an escrow account within 1 business day of acceptance of this offer. Should purchase not be executed for reasons outside the control of the buyer, the earnest money will be returned within 1 business day. At closing earnest money will go toward the agreed upon purchase price which will be paid in full at Closing.

   c.      Allocation of Purchase Price. The Purchase Price shall be allocated to the Purchased Assets as follows: WMC - $1,000,000; WMA - $350,000; WMD – 1,000,000. Based on



EXHIBIT

A

counterbids summited the Buyer reserves the right to change the allocation of purchase price. All tax returns and reports filed by Buyer and the Sellers with respect to the transactions contemplated by this Agreement shall be consistent with final allocation.

d.   Personal Property Taxes. Personal property taxes for the Purchased Assets shall be prorated at Closing by allocating such taxes on a per diem basis with Seller receiving a credit for any such taxes paid in advance for any period after the date of Closing or with Buyer receiving a credit for the period prior to and including the date of Closing for which such taxes have not been paid by Seller. In the event tax bills for the current year's taxes are not available on the date of Closing, taxes shall be prorated based upon the tax bills for the previous year and increased or decreased based upon any known increase or decrease in the assessed valuation or millage rate. The parties agree to have final utility readings as of the Closing with Seller responsible for the utilities up to the date of Closing and Buyer responsible for the utilities beginning on the date of Closing.

e.   Transfer Taxes. All transfer, documentary, sales, use, stamp, registration and such other taxes and recording, filing and other fees (including penalties and interest) incurred in connection with this Agreement or as a result of the conveyance of the Purchased Assets by the Receiver to Buyer shall be paid by Buyer when due, and the Receiver will, at its own expense, file all necessary tax returns and other documentation with respect to all such taxes and fees, and if required by applicable law, the Receiver will join in the execution of any such tax returns and other documentation.

f.   Real Property Leases. Buyer shall have the right exercisable without limitation at any time and from time to time prior to the applicable deadline to notify the Sellers in writing of the Buyer's election to treat each real property lease as either an assumed Real Property Lease or an Excluded Real Property Lease. Seller will ensure that all real property leases are paid up to date at closing. Should Buyer extend or continue lease agreement Buyer will be entitled to any pre-paid deposits at end of lease period.

g.   Access to Records. Prior to closing the Seller agrees to make every effort to copy all files, servers, and ERP system data. After closing Buyer will allow Seller access to any physical documents given 1 business day notice. Buyer agrees to keep 12 months of data/records/files.

h.   Contracts. Seller agrees to provide to Buyer copies of all existing contracts and agreements, within 2 business days of acceptance of bid.

6.   Deliveries at Closing. At the Closing, the Sellers shall deliver to Buyer a Bill of Sale for the Purchased Assets duly executed by the Sellers, as well as a copy of the Order from the Court approving this Agreement, and such other documentation as may be reasonably required to effectuate the transactions contemplated by this Agreement. At the Closing, the Buyer shall deliver to the Sellers the Purchase Price pursuant to Section 4.

7.   Conditions Precedent to Obligations the Parties. The respective obligations of the parties to close under this Agreement shall be subject to the satisfaction at or prior to Closing of the following conditions

a.   No Injunction. No preliminary or permanent injunction or other order or decree issued by any federal, state, local, municipal, governmental or quasi-governmental authority or court shall be in effect or pending which materially delays, restrains, enjoins, or

2

otherwise prohibits the transactions contemplated by this Agreement.

b. Order. Entry of an Order in the United States Bankruptcy Court Proceedings (the "Order") approving the sale of the Purchased Assets to the Buyer free and clear of all liens, claims and encumbrances.

8. Representations and Warranties of the Seller. The Sellers warrants and represents to Buyer that the statements contained in this Section 8 are true and correct and complete as of the date of this Agreement and shall be true and correct and complete as of the Closing Date.

a. Authority. The execution and delivery of this Agreement by the Sellers and the performance by it of the obligations to be performed hereunder will be duly authorized by the Court in the Bankruptcy Proceedings.

b. Title to the Purchased Assets. All of the Sellers' right, title and interest in the Purchased Assets will be transferred to Buyer pursuant to the Order.

c. **Limitations on Warranties and Representations. Buyer acknowledges and agrees the Purchased Assets are being conveyed by the Sellers "AS IS, WHERE IS" except for the representations and warranties contained in this Agreement, the Sellers makes no express or implied representations of warranties of any kind, including, without limitation, no representations or warranties as to the condition, merchantability, or fitness for a particular purpose of the Purchased Assets, the income derived or potentially to be derived from the Purchased Assets or the Sellers's business, or the expenses incurred or potentially to be incurred in connection with the Purchased Assets or the Sellers's business.**

9. Representations and Warranties of Buyer. Buyer warrants and represents to the Sellers that the statements contained in this Section 9 are true, correct and complete as of the date of this Agreement and shall be true, correct and complete as of the Closing Date.

a. Power. Buyer is duly organized and validly existing under the laws of the state of incorporation, and has the power to own its property and carry on its business.

b. Authority. Buyer has all necessary power to execute and deliver this Agreement and to consummate the transactions provided for herein. The execution and delivery of this Agreement by Buyer and the performance by it of the obligations to be performed hereunder have been duly authorized by all necessary and appropriate action. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby do not and shall not conflict with, or result in a breach of, or constitute a default under the terms or conditions of Buyer's entity documents and agreements, any court or administrative order or process to which Buyer is a party, any agreement or instrument to which Buyer is a party or by which Buyer is bound or any statute or regulation of any governmental agency.

c. Execution and Binding Agreement. This Agreement has been duly and validly executed and delivered by Buyer and constitutes a valid and legal binding obligation of Buyer enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws relating to or affecting the rights and remedies of creditors generally and to general principles of equity.

3

10.    Miscellaneous.

    a.    Amendment and Severability.  This Agreement may only be amended by a written agreement of the Sellers and Buyer.  If any provision, clause or part of this Agreement or the application thereof under certain circumstances, is thought to be invalid, the remainder of this Agreement, or the application of each provision, clause or part under other circumstances, shall not be affected thereby.

    b.    **Stalking Provision:**  If the Buyer were to be designated as a stalking horse in subsequent bidding for World Marketing assets, and if others outbid the Buyer, then World Marketing would have to pay the Buyer the sum $35,000 in Break Up Fee. Breakup fee is due within 5 days of close of sale.

    c.    Waiver.  The failure of the Sellers or Buyer to insist, in any one or more instances, upon performance of any of the terms or conditions of this Agreement, shall not be construed as a waiver or relinquishment of any rights granted hereunder or the future performance of any such term, covenant or condition.

    d.    Terms.

        i.    Buyer is only interested in all 3 operating facilities as a going concern.  Buyer reserves the right to withdraw his bid should he lose anyone one of the 3 locations.

        i.    Buyer shall have the right exercisable without limitation at any time prior to the applicable deadline, to notify the Sellers in writing of the Buyers election to treat each contract set forth as either Assumed Contract or an Excluded Contract.

    f.    Exclusive Jurisdiction.  The Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby.  In all claims, actions, classes of action, suits and proceedings relating to the foregoing shall be filed and maintained only in the Court, and the parties hereby consent to the jurisdiction of the Court.

    i.    Enforcement.  The parties agree that all costs incurred to enforce the terms of this Agreement, including but not limited to reasonable attorneys' fees, shall be paid by the party in violation of this Agreement to the non-violating party.

    j.    Time is of the Essence.  The parties agree that time is of the essence with respect to all provisions of this Agreement.

    k.    Final Approval.  This contract is subject to and only enforceable upon bankruptcy court approval.

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

BUYER:

By: _____

Its: _Owner_

SELLER: _____

Robert W. Kraft, President of Blue Streak Holdings, Inc., Manager of World Marketing Holdings which is Manager of World Marketing Chicago, LLC.

SELLER: _____

Robert W. Kraft, President of Blue Streak Holdings, Inc., Manager of World Marketing Holdings which is Manager of World Marketing Atlanta, LLC.

SELLER: _____

Robert W. Kraft, President of Blue Streak Holdings, Inc., Manager of World Marketing Holdings which is Manager of World Marketing Dallas, LLC.

5

SCHEDULE 1

ASSETS TO BE PURCHASED

[to be filled in]

## SCHEDULE 2

## EXCLUDED ASSETS

EXCLUDED ASSETS

## EXHIBIT A

## GENERAL BILL OF SALE

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, the undersigned, Robert W Kraft, Chairman and CEO, World Marketing Holdings LLC ("Sellers") hereby conveys and assigns to _____ ("Buyer") all right, title and interest of Sellers in and to the "Purchased Assets" as such are defined and more particularly described in the Asset Purchase Agreement dated as of _____ ___, 2015 between Sellers and Buyer (the "Asset Purchase Agreement").

Other than warranties expressly set forth in the Asset Purchase Agreement, Sellers transfer of the Purchased Assets is AS IS, WHERE IS, WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, and INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

The provisions of this General Bill of Sale are subject, in all respects, to the terms and conditions of the Asset Purchase Agreement.

Dated this ____ day of _____, 2015.

---

Robert W Kraft, Chairman and CEO
World Marketing Holdings LLC

2/26/14CJM
C:\Users\tjelleoat.WM\AppData\Local\Microsoft\Windows\Temporary
Files\Content.Outlook\S91V0BZN\purchase_agreement10_20_0925 (1).doc

Internet