UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 15bk32968 |
| World Marketing Chicago, LLC, *et al.*[1] | Chapter 11 |
| Debtors. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

This matter turns on the application of and exceptions to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN Act"). It comes on for consideration on the Application by the WARN Class Representatives, on Their Behalves and on Behalf of the WARN Class, Seeking Allowance of and Payment for an Administrative Claim for WARN Act Damages [Dkt. No. 688][2] (the "Application"), brought by the WARN Class Representatives (the "Representatives"), on their own behalves and on behalf of a class of WARN Act claimants (together with the Representatives, the "WARN Class"), in the Jointly Administered Case. The Application is opposed by Norman Newman, the Trustee of the World Marketing Liquidating Trust (the "Trustee").

The Application alleges that the WARN Class is entitled to an administrative claim arising from the termination of employees by World Marketing Chicago, LLC, World Marketing Dallas, LLC, and World Marketing Atlanta, LLC (collectively, the "Debtors") after September 28, 2015 (the "Petition Date"), the date on which the Cases were commenced. Such termination, the WARN Class argues, violates the WARN Act, as it occurred without the notice required therein. The WARN Class further alleges that the damages under the WARN Act have therefore arisen and are entitled to administrative priority under 11 U.S.C. § 503(b)(1)(A)(ii). The Trustee opposes the Application, arguing that that notice was not required as the Debtors were liquidating. The Trustee also contends that damages, if any, are prepetition in nature, and therefore not administrative.

Upon a review of the parties' respective filings and after holding hearings on the matter, the court finds that the exception relied upon by the Trustee is inapplicable. For this reason, it is the

---

[1] The Debtors are World Marketing Chicago, LLC (Case No. 15bk32968), World Marketing Dallas, LLC (Case No. 15bk32977) and World Marketing Atlanta, LLC (Case No. 15bk32975). The cases are jointly administered under Case No. 15-32968.

[2] Unless otherwise indicated, all docket and claims register references are for the jointly administered chapter 11 case, *In re World Marketing Chicago, LLC, et al.*, Case No. 15bk32968 (the "Jointly Administered Case", and individually, the "Chicago Case"). Docket and claims register references in *In re World Marketing Dallas, LLC*, Case No. 15bk32977 shall be referred to as in the "Dallas Case" and in *In re World Marketing Atlanta, LLC*, Case No. 15bk32975 shall be referred to as in the "Atlanta Case" (collectively, the "Cases").

court's conclusion that the Application should be and is, by order concurrent with this Memorandum Decision, granted.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Matters arising under section 503(b) of the Bankruptcy Code are matters that may only arise in a bankruptcy case and, thus, the bankruptcy court is empowered to enter final orders with respect to the same. *In re Radco Merch. Servs., Inc.*, 111 B.R. 684, 686 (N.D. Ill. 1990) ("A claim for administrative expenses is one of the core proceedings listed in 28 U.S.C. § 157(b)(2)(B)."). Further, all parties have consented to this court's entry of a final order adjudicating the Application.

Accordingly, final judgment is within the scope of the court's jurisdiction and constitutional authority.

## PROCEDURAL HISTORY

On October 21, 2015, the Representatives commenced an adversary proceeding styled as *Carroll v. World Marketing Chicago, LLC*, Adv. No. 15ap00784 (Bankr. N.D. Ill. 2015) (the "Adversary"), against the Debtors, therein seeking damages for the Debtors' alleged violation of the WARN Act and certification of the Adversary as a class action. On January 27, 2016, after the Official Committee of Unsecured Creditors intervened in the Adversary, all parties agreed to an order dismissing the same. *See* Order Granting Joint Motion for Entry of Order Regarding Class Certification and Related Relief [Adv. Dkt. No. 38] (the "Class Certification Order"). The Class Certification Order, in addition to dismissing the Adversary without prejudice in order to allow the WARN Class to pursue its claims by way of the bankruptcy claims resolution process, among other things, certified the WARN Class and appointed class counsel.

In March 2016, the WARN Class filed identical claims in each of the Debtors' three bankruptcy Cases.[3] Collectively, the WARN Class asserted an administrative claim worth an estimated $4 million (the "Class Claim"). On August 17, 2016, the WARN Class filed the Application presently before the court, seeking allowance of the Class Claim as an administrative claim. The Trustee filed its Objection to WARN Act Class Claim and Request for Allowance and Payment of Administrative Claim [Dkt. No. 718] (the "Objection") on October 4, 2016. The WARN Class filed its Reply by the WARN Class Representatives, on Their Own Behalves and on

---

[3]   Claim #31 in the Chicago Case, Claim #31 in the Dallas Case and Claim #21 in the Atlanta Case.

Behalf of the WARN Class, Seeking Allowance of and Payment for an Administrative Class Claim for WARN Act Damages [Dkt. No. 727] (the "Reply") on October 14, 2016.

In addition to the Application, Objection and Reply, the following motions are also relevant, as will be evident later:

(1) Motion for Authority To Use Cash Collateral and for Related Relief [Dkt. No. 4] (the "Chicago Cash Collateral Motion");

(2) Motion for Authority To Use Cash Collateral and for Related Relief [Dkt. No. 5 in the Dallas Case] (the "Dallas Cash Collateral Motion");

(3) Motion for Authority To Use Cash Collateral and for Related Relief [Dkt. No. 5 in the Atlanta Case] (the "Atlanta Cash Collateral Motion" and together with the Chicago Cash Collateral Motion and the Dallas Cash Collateral Motion, the "Cash Collateral Motions");

(4) Motion for Authority To Pay Pre-Petition Payroll [Dkt. No. 24] (the "Chicago Payroll Motion");

(5) Motion for Authority To Pay Pre-Petition Payroll [Dkt. No. 19 in the Dallas Case] (the "Dallas Payroll Motion");

(6) Motion for Authority To Pay Pre-Petition Payroll [Dkt. No. 19 in the Atlanta Case] (the "Atlanta Payroll Motion" and together with the Chicago Payroll Motion and the Dallas Payroll Motion, the "Payroll Motions"); and

(7) Debtors' Motion for Authority To Sell Assets Outside of the Ordinary Course of Business and Shorten Notice [Dkt. No. 52] (the "Sale Motion").

Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

After the matter was fully briefed, it was argued before the court on November 30, 2016, and the court delivered its ruling orally on February 15, 2017.[4] This Memorandum Decision restates and, to the extent it differs, supersedes the court's oral ruling.

---

[4] It should be noted that the Trustee objected to the Application on only one ground, the asserted "liquidating fiduciary" exception. The Trustee alleged that it reserved the right to assert other defenses to liability, the priority of any liability, or the amount of such liability. Objection, at ¶ 23. Nothing allows a party to pick and choose which parts of a matter it will defend, and later seek a second bite at the apple. The Seventh Circuit has encouraged parties to raise all relevant arguments when contesting a matter before the court. *Cf. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 820 (7th Cir. 2006), *as amended* (Apr. 11, 2006) ("The [plaintiff], represented by able legal counsel, should have exercised care in responding to the motion to dismiss and raised all the arguments it had against the motion.").

## BACKGROUND

The facts here are straightforward and undisputed. On the Petition Date, after commencing the Cases, the Debtors terminated a substantial number of employees. The Debtors, however, provided no prior notice of the termination. The parties do not dispute these facts. Rather, the parties dispute whether the Debtors' actions result in liability under the WARN Act and, if so, whether the claim for such liability is entitled to administrative status.

The Seventh Circuit recently described the WARN Act as follows:

> The WARN Act requires "employers" (defined as businesses with 100 or more full-time employees) to provide employees with written notice of impending "plant closings" or "mass layoffs" at least sixty days prior to the closing or layoffs. The WARN Act does not apply—and the employer need not provide advance notice to any of its workers—if the shutdown of a plant does not result in an employment loss of at least 50 full-time employees at a single site of employment, or the layoffs do not affect at least 33% of full-time employees. Despite the lack of practical distinction between eliminating 49 or 50 full-time jobs, or between laying off 32% or 33% of a workforce in a thirty-day period, the numerical thresholds in the WARN Act are immutable.

*Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 525-26 (7th Cir. 2011) (citations omitted). As the Seventh Circuit stated in *Phason v. Meridian Rail Corp.*, the WARN Act "draws a lot of bright lines; it is really nothing *but* lines . . . . None of these distinctions is inevitable; all are arbitrary. But using sharp lines makes the Act easier to administer." 479 F.3d 527, 530 (7th Cir. 2007) (emphasis in original). "If an employer crosses one of them without providing affected employees the requisite notice, it is liable to provide 'each aggrieved employee' with back pay and benefits for each day that the WARN Act was violated." *Ellis*, 633 F.3d at 526 (citation omitted).

---

If the Trustee thought that there were too many issues involved and that it would have been easier for all parties to narrow the issues at hand, then the Trustee should have raised this with the court directly. Reservations of rights in this context without court approval are meaningless. *Ramnarine v. CP RE Holdco 2009-1, LLC*, Case No. 12-61716-CIV, 2013 WL 1788503, at *6 (S.D. Fla. Apr. 26, 2013) ("[A] reservation of rights within an answer is essentially meaningless . . . [it does not] somehow confer a right to amend on Defendants without the Court's approval."); *Achievement & Rehab. Centers, Inc. v. City of Lauderhill*, Case No. 12-61628-CIV, 2012 WL 6061762, at *2 (S.D. Fla. Dec. 6, 2012) ("As the reservation of rights clause is of no effect, the Court will exercise its discretion to remove it from this case."); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071, 1083 (S.D.N.Y. 1990) (holding that the magistrate judge "did not abuse her discretion when striking [the] reservation of rights to name additional experts").

The entirety of the Application has always been before the court. Immediately prior to the court issuing its ruling, the Trustee volunteered that the matter was fully briefed and argued, and all parties and the court agreed. The Trustee, thus, must defend it as such. There is no question that all aspects of the Class Claim but amount of liability were before the court, and the court did not authorize the Trustee to respond only in part to the matters fully before the court. As the court has not ordered otherwise, the Trustee's choice to defend only in part means that it must forego its other defenses. As a result, all objections except those addressed herein and those relating to the amount of the Class Claim, which remains to be determined, are overruled.

The question before the court is, therefore, whether a claim under the WARN Act for termination of employees immediately following the commencement of a chapter 11 bankruptcy case is entitled to administrative priority in that case.

## DISCUSSION

Whether the WARN Class is entitled to an administrative claim for being terminated without proper WARN Act notice is first and foremost a question of whether the requirements of section 503 of the Bankruptcy Code have been satisfied. In order to make that determination, the court must also delve into the intricacies of the WARN Act itself. The court takes up each of these issues in turn.

A.  <u>Allowance of Administrative Expenses</u>

Section 503 of the Bankruptcy Code governs the allowance of administrative expenses. In pertinent part, section 503(b) states as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses ..., including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate including—
> >
> > > (i) wages, salaries, and commissions for services rendered after the commencement of the case; and
> > >
> > > (ii) wages and benefits awarded pursuant to a judicial proceeding ... as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor[.]

11 U.S.C. § 503(b)(1)(A).

The WARN Class, as the applicant, bears the burden of establishing its entitlement. *Woods v. City Nat. Bank & Tr. Co. of Chicago*, 312 U.S. 262, 268 (1941) (claimant seeking compensation from a bankruptcy estate bears the burden). That burden is by a preponderance of the evidence. *Dreamwerks Prod. Grp., Inc. v. Party Masters, Inc. (In re Party Masters, Inc.)*, Case No. 91 B 22949, Adv. No. 92ap00010, 1992 WL 106259, at *23 (Bankr. N.D. Ill. Apr. 23, 1992) (Squires, J.) ("The burden of proving entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence."). In determining how the statute is to be applied and whether the applicant has borne its burden, the court looks at the plain language of the statute. *Marek v. Chesny*, 473 U.S. 1, 16 (1985) ("[T]he starting point in interpreting statutes and rules is always the plain words themselves[.]"); *United States v. Boyles*, 57 F.3d 535, 544 (7th Cir. 1995) ("[T]he best way to interpret statutes is to look to their plain language[.]").

In utilizing that plain language approach, it becomes immediately clear that the subsections of 503(b)(1)(A) must be read independently. Because 503(b)(1)(A) introduces a nonexhaustive, demonstrative list, it is not necessary to satisfy each of the two subsections of section 503(b)(1)(A) to be entitled to an administrative claim. *See In re Truland Grp., Inc.*, 520 B.R. 197, 203 (Bankr. E.D.

Va. 2014) (concluding that the use of the word "and" "does not require [claimants] to satisfy both subsections"); *In re Philadelphia Newspapers, LLC*, 433 B.R. 164, 174 (Bankr. E.D. Pa. 2010) (same); *Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, 394 B.R. 765, 774 (Bankr. D. Del. 2008) (same). *Contra In re First Magnus Fin. Corp.*, 390 B.R. 667, 677 (Bankr. D. Ariz. 2008), *aff'd*, 403 B.R. 659 (D. Ariz. 2009) (holding that "*both* parts of the subsections must exist in order for a claimant to be entitled to an administrative expense") (emphasis in original).

Any other reading of this section is nonsensical, and would require by extension, that all subsections of 503(b)—also introduced by "including" and joined by "and"—to be met for a claim to be afforded administrative status. That is simply not the case. *Truland Grp.*, 520 B.R. at 203 ("No one would seriously suggest that an administrative claimant must satisfy all nine subsections in Section 503(b) in order to qualify for administrative expense treatment."); *Philadelphia Newspapers*, 433 B.R. at 174 ("The nine categories are independent of each other just like subsections (i) and (ii) of § 503(b)(1)(A)."). The plain language of section 503(b)(1)(A) therefore requires that an applicant satisfy only one of its subsections. The WARN Class bears this burden, and chooses to advance its claim under section 503(b)(1)(A)(ii).

In addition to the foregoing, an applicant must also comply with applicable, governing case law in this Circuit. The Seventh Circuit has stated that, "[i]n order to qualify as 'actual and necessary' administrative expenses, expenditures must benefit the estate as a whole rather than just the creditor claimant." *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.)*, 886 F.2d 859, 871 (7th Cir. 1989). *Jartran* also makes clear that prepetition claims cannot qualify. *Id.* ("None of these expenses were actual or necessary for preserving the estate . . . , which was not yet extant.").

In keeping with *Jartran* and the plain language of section 530(b)(1)(A)(ii), therefore, the WARN Class must not only establish that the Class Claim benefits the estate as a whole rather than just the WARN Class, but also that the Class Claim (1) is for wages and benefits, (2) is awarded pursuant to a judicial proceeding, (3) is awarded as back pay, (4) is attributable to any period of time occurring after the commencement of the case, (5) arises as a result of a violation of federal or state law by the debtor and (6) will not substantially increase the probability of layoff or termination of current employees.

As to the first of the six elements of the statute, WARN liability is clearly calculated in terms of wages and benefits. 29 U.S.C. § 2104(a)(1). As such, there is little doubt that a WARN Act claim is for wages and benefits, *Powermate*, 394 B.R. at 771 (WARN claims "must be in the nature of wages under the Code"); *Oil, Chemical & Atomic Workers, AFL-CIO-CLC v. Hanlin Grp., Inc. (In re Hanlin Grp., Inc.)*, 176 B.R. 329, 333 (Bankr. D.N.J. 1995) (same), and that the first element is satisfied.

As to the second, any award relating to the Class Claim by this court is unquestionably an award pursuant to a judicial proceeding, and the second element is satisfied.

As to the third element, the WARN Act itself explicitly classifies WARN liability as back pay. 29 U.S.C. § 2104(a)(1)(A) (defining the liability as "back pay for each day of violation"); *see also Ellis*, 633 F.3d at 526. This element is satisfied.

The fourth element requires that the Class Claim be attributable to a postpetition period of time. Judge Thorne of this court has already considered the timing of such claims in relation to the termination of employees and the bankruptcy petition date. *In re Calumet Photographic, Inc.*, Case No.

6

14bk08893, 2016 WL 3035468, at *4 (Bankr. N.D. Ill. May 19, 2016) (Thorne, J.) (declining to afford administrative expense status to employees whose WARN Act termination occurred prior to the commencement of the bankruptcy case). While Judge Thorne did not decide the inverse question—whether a postpetition termination gives rise to WARN Act liability—the reasoning applied in *Calumet* is sound. There is little question that WARN Act claims are in the nature of severance, *In re Continentalafa Dispensing Co.*, 403 B.R. 653, 658 (Bankr. E.D. Mo. 2009) ("In essence, the WARN Act is a statutory form of severance pay."), and are awarded in lieu of notice. As such, they vest in their entirety upon termination. *Powermate*, 394 B.R. at 777 (as WARN claims are in lieu of notice, they vest at the time of termination); *In re Fleming Packaging Corp.*, Case No. 93-82408, 2004 WL 2106579, at *3 (Bankr. C.D. Ill. Aug. 31, 2004) (severance pay in lieu of notice vests upon termination); *In re Cargo, Inc.*, 138 B.R. 923, 927 (Bankr. N.D. Iowa 1992) ("pay at termination in lieu of notice… is earned… upon termination"); *Hanlin Grp.*, 176 B.R. at 333-34 ("wages are 'earned' at the time of the termination of employment"). Thus, despite the Trustee's arguments to the contrary, the Class Claim is a postpetition claim and the fourth element is satisfied.

The Class Claim, to the extent allowed, arises directly from the federal WARN Act and a violation of the notice provisions therein. As such, the fifth element is satisfied.

As to the sixth and final element, given the nature of the terminations and the status of these, now, liquidating cases, the allowance of the Class Claim is not likely to substantially increase the probability of layoff or termination of current employees. The Debtors' plants are already shut down and the liquidations are complete, and the sixth and final element is satisfied.

The final, remaining question is whether the Class Claim benefits the estate as a whole rather than just the creditor claimant. *Jartran*, 886 F.2d at 871. While, in cases such as this where the termination occurred very shortly after the case is commenced, that question may appear convoluted, in actuality, it is not. As noted above, the WARN Act is a statutory form of severance pay in lieu of notice, earned at the moment of termination. Thus, unlike other types of pay that are earned continuously, *e.g.*, *In re Northwest Eng'g Co.*, 863 F.2d 1313, 1319 (7th Cir. 1988) (vacation pay is earned continuously irrespective of contractual vesting and as such must be prorated for administrative claim purposes), all of the Class Claim here is postpetition. Those courts that have considered such postpetition claims have uniformly determined that the the claims qualify as administrative. *E.g.*, *Former Empls. of Builders Square v. Hechinger Inv. Co. of Delaware (In re Hechinger Inv. Co. of Delaware)*, 298 F.3d 219, 227 (3d Cir. 2002) ("pay at termination in lieu of notice is allowed administrative expense priority"); *Teamsters Local No. 310 v. Ingrum (In re Tucson Yellow Cab Co.), Inc.*, 789 F.2d 701, 703 (9th Cir. 1986) (noting that the courts within the Ninth Circuit apply the rule that "pay at termination in lieu of notice is entitled to priority payment as a cost of administration"); *Lasky v. Phones for All, Inc. (In re Phones for All, Inc.)*, 262 B.R. 914, 916 (N.D. Tex. 2001) ("When an agreement provides for severance in lieu of notice, the full claim for severance pay is accorded administrative priority, if the employee was terminated post-petition."), *aff'd*, 288 F.3d 730 (5th Cir. 2002).

Thus, unlike severance that might be calculated on length of service, severance in lieu of notice is based on the bargain at the time of termination—"the payments are made in consideration of quick departure from employment after the petition date—consideration given after the petition." *Hechinger*, 298 F.3d at 227. The estate as a whole is, therefore, conferred the benefit of that bargain, and the administrative priority of such claims comports with *Jartran*.

The WARN Class has met its burden by proving the Class Claim meets the statutory requirements provided by section 503 of the Bankruptcy Code. The court now turns to the issues raised in the remainder of the Trustee's Objection.

B. <u>Liability under the WARN Act</u>

As noted above, the WARN Act requires employers "to provide employees with written notice of impending 'plant closings' or 'mass layoffs' at least sixty days prior to the closing or layoffs." *Ellis*, 633 F.3d at 525. As the Seventh Circuit in *Ellis* made clear, if the strict criteria of the WARN Act are not met, no liability accrues. *Id.*

The parties here do not, however, dispute that the termination in question would, under ordinary circumstances, trigger WARN Act liability. Such liability is uncontested. The court need not, therefore, perform a traditional WARN Act analysis of liability. Instead, the parties focus on whether an exception to the WARN Act applies, the basis of the Trustee's Objection. If an exception applies and that exception precludes liability, then regardless of the section 503(b) analysis above, the Class Claim cannot be allowed.

There are three traditional statutory exceptions contained within section 2102(b) of the WARN Act, as follows:

> **(b) *Reduction of notification period***
>
> (1) An employer may order the shutdown of a single site of employment before the conclusion of the 60-day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.
>
> (2) (A) An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.
>
> (B) No notice under this chapter shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States.

29 U.S.C. § 2102(b) (emphasis added). These exceptions, as well as the traditional labels for each, are described as follows:

> Under the first exception, an employer can provide less notice if it is actively seeking capital or business which, if obtained, would enable that employer to avoid or to postpone the shutdown. Section 2102(b)(1) ("faltering company" exception). Second, an employer can provide less than 60-day notice if it needs to close a plant due to circumstances that were not reasonably foreseeable as of the time such notice would be required. Section 2102(b)(2)(A) ("unforeseeable business circumstances" exception). Finally, an employer does not need to give any notice if the plant closing

8

was due to any form of natural disaster such as a flood or earthquake. Section 2102(b)(2)(B) ("natural disaster" exception).

*United Paperworkers Int'l Union v. Lennon Wallpaper Co.*, Case No. 90C0996, 1992 WL 67820, at *2 (N.D. Ill. Mar. 26, 1992).

The Trustee does not assert any of these exceptions. As such, the court refrains from discussing them in greater detail. Instead, the Trustee alleges a different exception—one stemming from the Department of Labor's commentary to the WARN Act—which states in pertinent part, as follows:

> [A] *fiduciary* whose *sole function* in the bankruptcy process is to *liquidate* a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense. In other situations, where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 Fed. Reg. 16,045 (1989) (emphasis added). In the context of the Department of Labor's commentary, it is clear that the Department of Labor takes the position that a fiduciary of this nature is not an "employer" under the WARN Act, *see* 29 U.S.C. § 2101(a)(1) (defining employer), and thus the notice provisions would not apply.

This so-called "liquidating fiduciary" exception exists nowhere in the statute itself. As a result, the court is faced here with two questions: Is there, in fact, a liquidating fiduciary exception to the WARN Act, and, if there is, how does such exception apply in bankruptcy? As far as the court is aware, each of these questions is an issue of first impression within the Seventh Circuit. The court will consider each, in turn.

  1. Is there a Liquidating Fiduciary Exception to the WARN Act?

As the liquidating fiduciary exception asserted by the Trustee exists nowhere in the statute, the court must ask what weight it should be given. The Seventh Circuit has previously considered the Department of Labor's commentary to the WARN Act in different circumstances. *Ellis*, 633 F.3d at 526 (as to what constitutes a voluntary departure under the WARN Act). In *Ellis*, the Seventh Circuit concluded that the commentary should be afforded "significant weight."

Other circuits have done likewise. *See, e.g., Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 810 (4th Cir. 2007) (basing its decision on "the purposes of the WARN Act, the provision's language, and the Department of Labor commentary"); *Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Local 572, Int'l Bhd. of Teamsters, AFL-CIO v. Weslock Corp.*, 66 F.3d 241, 244 (9th Cir. 1995) (stating that its WARN Act interpretation "is supported by the commentary appended to the [Department of Labor's] final regulations").

The bankruptcy courts that have considered the specific question of whether a liquidating fiduciary exception to the WARN Act applies have uniformly concluded that it does. *E.g., Walsh v. Diamond (In re Century City Doctors Hosp., LLC)*, Case No. CC-09-1235-MkJaD, 2010 WL 6452903, at *7 (B.A.P. 9th Cir. Oct. 29, 2010) (holding that "the bankruptcy court did not err when it relied on

the [Department of Labor's] Commentary to determine whether the Trustee qualified as an employer under the WARN Act"); *Thielmann v. MF Global Holdings Ltd. (In re MF Global Holdings Ltd.)*, 481 B.R. 268, 282 (Bankr. S.D.N.Y. 2012) ("Looking to the [Department of Labor's commentary] as guidance, as well as all of the court decisions that have considered the issue, the Court is persuaded that the 'liquidating fiduciary' principle is applicable in these proceedings.").

In light of the foregoing, the court has little hesitation in holding that there is indeed a liquidating fiduciary exception to the WARN Act in the manner set forth in the Department of Labor commentary. The liquidating fiduciary exception, by the express terms of the Department of Labor commentary, applies "in the bankruptcy process." 54 Fed. Reg. 16,045. How it applies is a more difficult question.

2.  Applying the Liquidating Fiduciary Exception in Bankruptcy

The Department of Labor commentary makes clear that for the liquidating fiduciary exception to apply, there must both be a fiduciary and that fiduciary's *sole function* must be to liquidate.

In chapter 7, there is no question that the trustee is a fiduciary. *Dechert v. The Cadle Co.*, 333 F.3d 801, 802 (7th Cir. 2003) ("[chapter 7 debtor]'s trustee has a fiduciary obligation to [chapter 7 debtor]'s unsecured creditors"). Further, there is no question that the chapter 7 trustee has a primary and overriding duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). As such, a chapter 7 trustee is just the sort of liquidating fiduciary that is contemplated in the Department of Labor commentary.

Chapter 11, however, is not as simple. In chapter 11, there is either a debtor in possession or a trustee. In either case, the law is clear that such entity is a fiduciary. *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir. 1999) ("The debtor-in-possession owes a fiduciary duty to his creditors[.]"); *State of Ill., Dep't of Revenue v. Schechter*, 195 B.R. 380, 384 (N.D. Ill. 1996) (the chapter 11 trustee "had a fiduciary duty"); *see also* 11 U.S.C. § 1107(a) (placing on the debtor in possession the same duties as exist on a trustee). Thus both the debtor in possession and the chapter 11 trustee are fiduciaries.

The sole function of the debtor in possession and chapter 11 trustee is *not* to liquidate. Unless the court orders otherwise, section 1108 of the Bankruptcy Code automatically affords both the debtor in possession and the trustee the ability to operate the debtor's business for the benefit of creditors, and not solely for the purpose of liquidation. As the *Schechter* court stated, there existed a "fiduciary duty to operate the business to preserve the value of the estate and to cease operations where continued operations would deplete the estate with no reasonable prospect of rehabilitation."). *Schechter*, 195 B.R. at 384.

Recall for the moment the plain words of the Department of Labor commentary, that the fiduciary's *sole function* in the bankruptcy process must be to *liquidate* a failed business and that where the fiduciary may continue to operate the business for the benefit of creditors, the exception does not apply. 54 Fed. Reg. 16,045. Unless the court has entered an order under section 1108 constraining the right to operate a debtor's business, the plain words of the commentary appear to

10

clearly exclude, therefore, both chapter 11 trustees and debtors in possession from invoking the liquidating fiduciary exception. Chapter 11, after all, is titled "Reorganization."

It is just those plain words that should control. After all, without them, no exception would exist. To go beyond the plain words here would be to legislate from the bench.

This approach is borne out by the existing case law on interpreting administrative commentary. Just as courts do when interpreting statutes, courts interpret commentary by looking first at its plain language. *See Imperial Crane Servs., Inc. v. Cloverdale Equip. Co*, Case No. 13 C 4750, 2015 WL 4751100, at *4 (N.D. Ill. Aug. 11, 2015) (analyzing "the plain language of the commentary" to reach its holding); *see also, e.g., United States v. Evans*, 782 F.3d 1115, 1117 (10th Cir. 2015) (same), *cert. denied*, 136 S. Ct. 171 (2015); *United States v. Peroceski*, 520 F.3d 886, 888 (8th Cir. 2008) (same); *United States v. Akinsuroju*, 166 F. App'x 748, 751 (5th Cir. 2006) (same); *United States v. Miller*, 206 F.3d 1051, 1052 (11th Cir. 2000) (same).

It appears therefore that the plain language of the Department of Labor commentary requires a measuring of what a fiduciary may prospectively do. It is a measure of the powers of the fiduciary, not the fiduciary's actions even if those actions invoke only a subset of the fiduciary's powers. If a fiduciary's powers exceed those set forth in the commentary, such fiduciary is excluded from claiming the exception, regardless of how those powers are used.

Such a plain and simple exclusion would, while providing certainty, also detrimentally effect liquidating chapter 11 cases. Perhaps that is why the leading case on this issue goes beyond the plain language of the Department of Labor commentary.

The Third Circuit's *United Healthcare* case is that leading authority on the issue. *Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare Sys., Inc. (In re United Healthcare Sys., Inc.)*, 200 F.3d 170 (3d Cir. 1999). In *United Healthcare*, the Third Circuit applied the liquidating fiduciary exception in chapter 11, after the debtor in possession terminated its employees postpetition. *Id.* at 178.

In applying the liquidating fiduciary exception, the Third Circuit clearly focused on the debtor's "intent to liquidate." *Id.* at 179. Thus, rather than focus on what the debtor's powers (as the plain language of the Department of Labor's commentary clearly indicates should be done), the Third Circuit focused on what the debtor actually did. *Id.* (supporting its holding with evidence that showed United Healthcare was clearly liquidating). The Third Circuit bases its reasoning, on the definition of employer in the WARN Act and other aspects of the Department of Labor commentary. The WARN Act defines an employer as a "business enterprise," but does not define the latter term. 29 U.S.C. § 2901(a)(1). The Third Circuit found, earlier in the same section of the Department of Labor commentary where the liquidating fiduciary discussion occurs, an explanation that business enterprises are those that "engage in business." 54 Fed. Reg. 16,044; *United Healthcare*, 200 F.3d at 177. As such, the hindsight analysis applied by the Third Circuit was an effort to determine whether the debtor in possession was an employer, not whether the specific liquidating fiduciary exception in the Department of Labor commentary applied.

Other courts, following *United Healthcare*, have done likewise. *See, e.g., MF Glob.*, 481 B.R. at 283 (holding that a complaint needed more facts to determine whether the debtors were reorganizing or liquidating); *Cain v. Inacom Corp. (In re Inacom)*, Adv. No. 00-1724, 2001 WL 1819997,

at *1 (Bankr. D. Del. Sept. 26, 2001) (holding that it was a "material question of fact" whether the debtor was a liquidating fiduciary at the time it had terminated employees).

There does not appear to be any court that has constrained itself to the plain language of the Department of Labor's commentary on the liquidating fiduciary itself. Instead, these courts have applied a combination of that exception and hindsight, retrospectively measuring what was done in order to create a new, court-made liquidating fiduciary exception that is not in line with the specific language of the commentary itself.

This has created a two-fold liquidating fiduciary exception; one created directly from the Department of Labor's specific language on point and one derived from other language of the commentary.

It is this court's view that the latter is unsupported. Whether it be under the principle of *ejusdem generis* or otherwise, the specific expression of intent by the Department of Labor should govern the more general statements. By narrowly stating the liquidating fiduciary exception, the Department of Labor has expressed its intent that business enterprise not be read broadly in the fashion done by the courts to date.

*United Healthcare* and its progeny are not binding in this Circuit, and were it required to do so, this court would reject the court-made liquidating fiduciary exception as not in line with the more specific language of the Department of Labor commentary. Under the facts of this case, it is not necessary for the court to choose.

3. Applying the Liquidating Fiduciary Exception in this Case

The reason the court need not determine whether or not to follow *United Healthcare* is that under either approach—the plain language of the Department of Labor commentary or the *United Healthcare* retrospective analysis—the result is the same in this case.

To be clear, were the court to apply the plain language of the Department of Labor commentary, no liquidating fiduciary exception would apply in this case. Given the debtor in possession's ability to operate the debtor's business, it would not qualify.

Were the court instead to apply *United Healthcare*'s court-made liquidating fiduciary exception, hindsight is equally unavailing.

The Trustee alleges that the Debtors were always liquidating. As proof, the Trustee relies on a September 28, 2015, e-mail to employees sent hours after the Debtors filed for chapter 11. That email stated that the Debtors were "shutting down operations." Objection, at ¶ 2. The WARN Class does not dispute the existence or content of that email. The WARN Class does also not dispute that the Debtors did in fact liquidate, and that as alleged in the Objection, the Debtors "completed the liquidation and sale of substantially all assets by February 2016." Objection, at ¶ 13.

While the Debtors did in fact liquidate, it is not clear that that was their intent or sole course of action.

On September 29, 2015, the day after the bankruptcy filing, each Debtor filed a motion seeking authority to use cash collateral. In each of the Cash Collateral Motions, the respective

Debtor made several representations to the court and to the parties appearing before it that the Debtor was reorganizing, not liquidating.

First, each Debtor asserted that the cash collateral was necessary "to continue to *operate its business* and manage its financial affairs, and effectuate an effective *plan of reorganization*[.]" Chicago Cash Collateral Motion, at ¶ 12 (emphasis added); Dallas Cash Collateral Motion, at ¶ 12 (emphasis added); Atlanta Cash Collateral Motion, at ¶ 12 (emphasis added).

Second, each Debtor stated that cash collateral would be used for "payroll, insurance, utilities, management fees, supplies and other miscellaneous items needed in the *ordinary course of business*." Chicago Cash Collateral Motion, at ¶ 12 (emphasis added); Dallas Cash Collateral Motion, at ¶ 12 (emphasis added); Atlanta Cash Collateral Motion, at ¶ 12 (emphasis added).

Third, each Debtor stated that if it was not authorized to use cash collateral, then "the Debtor will be unable to continue to *operate its business*, thereby eliminating any reasonable *prospect for a successful reorganization*." Chicago Cash Collateral Motion, at ¶ 15 (emphasis added); Dallas Cash Collateral Motion, at ¶ 15 (emphasis added); Atlanta Cash Collateral Motion, at ¶ 15 (emphasis added).

Further, on October 7, 2015, more than a week after the bankruptcy filing and the termination of employees, each Debtor filed a motion in each of their Cases for authorization to pay prepetition payroll. In each of the Payroll Motions, each Debtor stated that it was "*operating its business*" in the "*reorganization case*." Chicago Payroll Motion, at ¶ 2 (emphasis added); Dallas Payroll Motion, at ¶ 2 (emphasis added); Atlanta Payroll Motion, at ¶ 2 (emphasis added).

Each Debtor further stated that failure to pay its payroll in a timely fashion would "jeopardize its *ability to reorganize*." Chicago Payroll Motion, at ¶ 8 (emphasis added); Dallas Payroll Motion, at ¶ 8 (emphasis added); Atlanta Payroll Motion, at ¶ 8 (emphasis added).

With the Payroll Motions, the Debtors' Chief Operating Officer stated in sworn affidavits that if authority was not granted, then the Debtors would be forced to "cease business operations" and would "have no alternative other than liquidation." Chicago Payroll Motion, Exhibit A, at ¶¶ 7-8; Dallas Payroll Motion, Exhibit A, at ¶¶ 7-8; Atlanta Payroll Motion, Exhibit A, at ¶¶ 7-8.

The Debtors not only made these statements, but in so doing, requested and received relief from the court in line with the statements. That makes what occurred more than statements alone, but actions. These actions are not in line with a business that was solely liquidating.

Further, on October 26, 2016, nearly a month after commencing the Cases and thereafter terminating the employees in the WARN Class, the Debtors filed the Sale Motion. In the Sale Motion, the Debtors spoke repeatedly to a "going concern" sale of the Debtors' business. Sale Motion, at ¶¶ 11, 16, 25, 26. Once again, the Debtors did more than state that they were not liquidating, they acted in a manner inconsistent with liquidation. Even if the Debtors were conducting their business solely for the purposes of a sale, they were engaged in some form of business.

What the Debtors intended and what they were doing at the time of the termination of the WARN Class is, therefore, muddied at best. In such circumstances, there are a number of compelling reasons not to apply the court-made liquidating fiduciary exception.

First, this is an exception applied to liquidating fiduciaries, and as an exception, it should be applied sparingly. *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640-41 (4th Cir. 1997) ("Because the WARN Act is remedial legislation, its exceptions are to be construed narrowly."). While the Department of Labor itself has indicated that some exceptions to the WARN Act should be construed narrowly and others not, *see, e.g.*, 54 Fed. Reg. 16,042-01, in this instance, anything other than a narrow interpretation runs the risk of allowing circumstances well beyond those intended by the Department of Labor to vitiate the protections afforded employees by the WARN Act.

Second, to allow the Debtors to act publicly in one manner and privately in another, yet maintain the protections that might have been lost if their private actions were made public, would be abhorrent. All parties in a chapter 11 case should be entitled to rely on the public representations of a debtor in possession or trustee regarding its intent to reorganize. The court has no magic time machine to turn back the clock and determine what objections the Debtors may have faced had all of their actions, both public and private, been consistent. Debtors should be encouraged to act in a transparent manner in bankruptcy. Affording debtors, and in particular these Debtors, the protections of an exception to the WARN Act when they were anything but transparent would be to encourage duplicity.

As a result, it is the court's determination that even if the *United Healthcare* court-made exception were adopted, the Debtors in this Jointly Administered Case are unentitled to the benefit of the liquidating fiduciary exception thereunder.

Under either the plain words of the Department of Labor commentary or the *United Healthcare's* court-made, retrospective analysis, therefore, the Trustee's Objection must fail. Liability under the WARN Act exists and the Class Claim will be afforded administrative status under section 503(b)(1)(A)(ii).

## CONCLUSION

The WARN Class has satisfied its required burden and proven that the Class Claim is entitled to administrative priority based on the violation of the WARN Act by the Debtors. The Trustee's Objection, that the liquidating fiduciary exception applies, fails.

For the foregoing reasons, the court concludes that the Application should and will be GRANTED and the Class Claim allowed, in an amount to be determined at a later hearing. A separate order resolving the Application to that effect will be issued concurrently with this Memorandum Decision.

Dated: February 24, 2017                    ENTERED:

                                            _____KM
                                            Timothy A. Barnes
                                            United States Bankruptcy Judge