UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 15bk32968 |
| | (Jointly Administered) |
| World Marketing Chicago, LLC, *et al.*,[1] | |
| | Chapter 11 |
| Debtors. | |
| | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

This matter comes before the court on the Motion for Leave to File Counterclaims Against Trustee for Breach of Fiduciary Duty and Breach of Trust [Dkt. No. 901][2] (the "Motion") filed by Robert W. Kraft, Blue Streak Holdings, Inc., and World Marketing Holdings, LLC (together, the "Kraft Parties"), seeking to file counterclaims against Norman B. Newman, Liquidating Trustee of the World Marketing Liquidating Trust (the "Trustee") in the Adversary.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 23 U.S.C. §§ 157(b)(1), (c). Instead, the bankruptcy court must

---

[1]   The Debtors are World Marketing Chicago, LLC (Case No. 15bk32968), World Marketing Dallas, LLC (Case No. 15bk32977) and World Marketing Atlanta, LLC (Case No. 15bk32975). The cases are jointly administered under Case No. 15bk32968.

[2]   References to docket entries in the above-captioned bankruptcy case (the "Bankruptcy Case") will be noted as "Dkt. No. ___." References to docket entries in the related adversary proceeding (the "Adversary"), *Newman v. Kraft*, Case No. 17ap00499 (Bankr. N.D. Ill. filed Sept. 27, 2017) (Barnes, J.), will be noted more specifically as "Adv. Dkt. No. ___."

"submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), as a motion for leave to file counterclaims against a liquidating trustee is a matter which concerns the administration of the estate, and as such, this court may determine the matter. 28 U.S.C. § 157(b)(1). Further, all parties have consented to the court's adjudication of the Motion. *Wellness Int'l Network, Ltd. v. Sharif*, — U.S. —, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

Accordingly, the court has the jurisdiction and the constitutional authority to hear and determine the Motion.

## PROCEDURAL HISTORY

In addition to reviewing the Motion, the court has considered the arguments of the parties at the hearing on February 14, 2018 (the "Hearing"). The court has also reviewed and considered the following filed documents relating to the Motion:

(1) Response to the Insiders' Motion to Bring Counterclaims Against the Liquidating Trustee [Dkt. No. 920];

(2) Reply in Support of Motion for Leave to File Counterclaims Against Trustee for Breach of Fiduciary Duty and Breach of Trust [Dkt. No. 928];

(3) Supplemental Response to the Insiders' Motion to Bring Counterclaims Against the Liquidating Trustee [Dkt. No. 942]; and

(4) Supplemental Reply to Trustee's Supplemental Response to Motion for Leave to File Counterclaims Against Trustee for Breach of Fiduciary Duty and Breach of Trust [Dkt. No. 949].

The court has also taken into consideration all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the Bankruptcy Case, the court has taken judicial notice of the contents of the docket in this Adversary and the Bankruptcy Case. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## BACKGROUND

The facts relevant to deciding the issue in the Motion are simple. World Marketing Chicago, LLC, World Marketing Dallas, LLC, and World Marketing Atlanta, LLC (collectively, the "Debtors"), were subjected to a WARN Act class claim, as described by this court in its previous decision in this case, *In re World Mktg. Chicago, LLC*, 564 B.R. 587 (Bankr. N.D. Ill. 2017) (Barnes, J.)

(the "WARN Opinion").[3] As set forth in the WARN Opinion, the Trustee asserted only one possible defense to the WARN claim and attempted to reserve other defenses to be asserted at a later time. *Id.* at 593 n.4. This court found that the Trustee, in doing so, waived the right to propound any further defenses, as any further potential defenses were neither asserted nor was the reservation of these defenses sought by leave of the court. *Id.*

On September 27, 2017, the Trustee filed the Adversary against the movants, the Kraft Parties, and several other entities [Adv. Dkt. No. 1]. The sixteen-count complaint alleges various torts and liability claims against the Kraft Parties and the other entities. In response, the Kraft Parties sought to countersue the Trustee in the Adversary for breach of fiduciary duty and breach of trust, based on the Trustee's defense of the WARN claim. Anticipating the application of the so-called "*Barton* doctrine," discussed below, the Kraft Parties brought the Motion under consideration for leave to sue the Trustee, to which the Trustee objected.

The matter has been fully briefed and subsequently argued at the Hearing and has been taken under advisement. Except as otherwise expressly stated herein, this Memorandum Decision resolves all the matters under advisement in relation to the Motion.

## DISCUSSION

As noted above, the central question before the court is that of the *Barton* doctrine and its application to the matter at bar. The Kraft Parties submit two principal arguments as to why, as a threshold matter, the *Barton* doctrine does not apply to the claims the movants seek to file. First, the Kraft Parties assert that the *Barton* doctrine is inapplicable when the party seeks to file a claim against a trustee in an adversary proceeding in the bankruptcy court which appointed the trustee. Second, the movants argue that the *Barton* doctrine does not apply to counterclaims against a trustee when the trustee begins the suit, even if the suit is filed in a non-appointing forum. This case also raises the issue as to whether the *Barton* doctrine extends just to statutory trustees or covers trustees appointed pursuant to a bankruptcy plan.

As will be shown below, the Motion may be resolved by answering the first question. As a result, the court need not examine the latter two. In order to answer the first question, the court must consider the nature of the *Barton* doctrine itself, its relation to jurisdiction and immunity and its application to matters brought before the bankruptcy court itself.

A.   The *Barton* Doctrine

The *Barton* doctrine has at its source the Supreme Court case of *Davis v. Gray*, 83 U.S. 203, 218 (1872), wherein the Supreme Court stated that

> A receiver is appointed upon a principle of justice for the benefit of all concerned. ... He is virtually a representative of the court, and of all the parties in interest in the litigation wherein he is appointed. ... He is not appointed for the benefit of either of the parties, but of all concerned. ... The court will not allow him to be sued

---

[3]  The WARN Opinion was appealed by the Trustee to the United States District Court for the Northern District of Illinois on March 10, 2017, Appeal No. 17-CV-1957. That appeal was dismissed on October 25, 2017, and the WARN Opinion is, therefore, final.

> touching the property in his charge, nor for any malfeasance as to the parties, or
> others, without its consent; nor will it permit his possession to be disturbed by force,
> nor violence to be offered to his person while in the discharge of his official duties.
> In such cases the court will vindicate its authority, and, if need be, will punish the
> offender by fine and imprisonment for contempt.

*Id.* at 217-18 (footnotes omitted).

Better known, however, as it is the case upon which the doctrine draws its name, is *Barton v. Barbour*, 104 U.S. 126 (1881). In *Barton*, the Court was asked to determine the propriety of a lawsuit against a state court-appointed receiver of all rights and property of a railroad company. *Id.* at 127. The receiver had been appointed by a Virginia state court, which had authorized him to defend all actions brought against him as the receiver and declared that he would not incur personal liability while conducting business of the railroad. *Id.* That was tested when the plaintiff, injured by the railroad during the receivership, brought suit against the receiver in the Supreme Court of the District of Columbia. *Id.* at 128. No permission from the Virginia state court had been obtained prior to the bringing of the suit. *Id.*

The *Barton* Court relied on *Gray* and determined that the plaintiff should have first sought leave of the appointing court before bringing her personal injury suit against the receiver. *Id.* at 136-37. The Court reasoned that the plaintiff's suit would, in effect, take money from the trust without regard to other creditors and the appointing court's orders. *Id.* at 129. In invalidating the suit, the Supreme Court focused almost entirely on the effect of the suit on the receivership and the power of the court overseeing that receivership to manage the same. *Id.* at 128-29. Among other things, the Supreme Court observed that the foreign suit interfered with the ability of the receivership court to oversee proceedings which effect the receivership. *Id.* at 128. Allowing another court to intervene would be a "usurpation of the powers and duties which belonged exclusively to [the receivership] court, and it would have made impossible of performance the duty of that court to distribute the trust assets to creditors equitably and according to their respective priorities." *Id.* at 136. In light of that, the Supreme Court reasoned that, without leave of the appointing court, a suit against a court-appointed receiver in a foreign court did not confer jurisdiction over the receiver. *Id.*

Not surprisingly, though initially about state court receiverships, the courts that have considered *Barton* in the context of bankruptcy have held its reasoning applicable to bankruptcy trustees. *See, e.g., Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970 (9th Cir. 2005); *Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2001); *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000); *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Vass v. Conron Bros. Co.*, 59 F.2d 969, 970 (2d Cir. 1932). Congress too has considered the *Barton* doctrine's application in bankruptcy, expressly excepting from its provisions trustees who carry on a debtor's business. 28 U.S.C. § 959(a) ("Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property.").

The Seventh Circuit is no different. *See In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). In *Linton*, the Seventh Circuit applied the *Barton* doctrine to a bankruptcy trustee, holding that even once a chapter 7 bankruptcy case had been closed, permission was still required from the bankruptcy court to bring suit against the chapter 7 trustee *in state court*. *Id.* at 545-46. In considering the *Barton*

4

doctrine in the context of the Bankruptcy Code, the Seventh Circuit noted that the Bankruptcy Code's statutory language itself does not require a party to seek leave of the appointing court before suing a trustee in *the bankruptcy court*. *Id.* at 545. Nonetheless, the *Linton* court applied the federal common law rule from *Barton*, echoing the sentiments of *Barton* when noting that "[t]he threat of [a trustee] being distracted or intimidated" by a lawsuit in foreign court "is then very great." *Id.* Letting such suits proceed unchecked would mean that "trusteeship will become a more irksome duty" and "it will be harder for courts to find competent people to appoint as trustees." *Id.* The Seventh Circuit concluded that "requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively." *Id.*

As the District Court has subsequently summarized, "[t]he *Barton* doctrine has three main purposes: (1) to maintain the integrity of the bankruptcy court's jurisdiction; (2) to control burdensome litigation that may impede the trustee's work as an officer of the court; and (3) to allow the bankruptcy court to monitor effectively the trustee's work." *CIT Commc'ns Fin. Corp. v. Maxwell (In re marchFIRST, Inc.)*, Case No. 01 B 24742, 2008 WL 4287634, at *2 (N.D. Ill. Sept. 12, 2008) (relying on *Linton*), *aff'd sub nom. In re marchFIRST Inc.*, 589 F.3d 901 (7th Cir. 2009).

Despite and perhaps because of the numerous decisions which apply the *Barton* doctrine to bankruptcy trustees, there is some ambiguity regarding how the rule operates. Some courts treat the *Barton* doctrine in a jurisdictional way, while others incorrectly equate it with immunity. *See Phoenician Mediterranean Villa, LLC v. Swope (In re J&S Props.)*, 545 B.R. 91, 98 (Bankr. W.D. Pa. 2015) (discussing the different approaches), *aff'd sub nom. Phoenician Mediterranean Villa, LLC v. Swope*, 554 B.R. 747 (W.D. Pa. 2016), *aff'd sub nom. In re J & S Props., LLC*, 872 F.3d 138 (3d Cir. 2017). As the *J&S* court made clear, however, "the *Barton* doctrine involves jurisdiction, not substantive law. If a plaintiff wants to bring suit against a bankruptcy trustee in a forum other than the bankruptcy court, the *Barton* doctrine requires approval of the bankruptcy court in order to proceed in the alternate forum." *Id.* at 98.

Thus, when applicable, the *Barton* doctrine affords the bankruptcy court the power to determine whether a suit against a trustee should be permitted to go forward in another court. Few clear rules appear to exist, however, as to how the bankruptcy court goes about that determination.

One clear rule is thus: if the bankruptcy court determines that the movant has failed to propound a *prima facie* case against a bankruptcy trustee, permission should be denied. *Morris Healthcare & Rehabilitation Ctr., LLC v. Berish (In re Morris Senior Living, LLC)*, 526 B.R. 750, 757-58 (N.D. Ill. 2014) ("A party seeking leave of court to sue a trustee . . . 'must make a *prima facie* case against the trustee, showing that the party's claim is not without foundation.'") (*quoting In re Nat'l Molding Co.*, 230 F.2d 69, 71 (3d Cir. 1956)); *Secs. and Exch. Comm'n v. The Nutmeg Grp., LLC*, Case No. 09 C 1775, 2011 WL 5042092, at *3 (N.D. Ill. Oct. 19, 2011) (the movant "must do more than meet the liberal notice-pleading requirements of Rule 8"). "To apply a less stringent standard would eviscerate the protections extended to the Trustee." *Leighton Holdings, Ltd., v. Belofsky (In re Kids Creek Partners, L.P.)*, Case No. 00 C 4076, 2000 WL 1761020, at *2 (N.D. Ill. Nov. 30, 2000). Most of the cases in this context appear to fail at this stage. *See, e.g., In re Weitzman*, 381 B.R. 874, 880 (Bankr. N.D. Ill. 2008) (Sonderby, J.).

Even if a *prima facie* case is propounded, however, the express holdings of *Barton* and *Linton* appear to require more. The bankruptcy court must also determine the degree to which it must

5

control the litigation to prevent it from becoming burdensome to and impeding the trustee's work. *marchFIRST*, 2008 WL 4287634, at *2.

The Ninth Circuit has given some guidance as to that inquiry, stating that the bankruptcy court should consider, among other potential factors, whether: (1) the claims pertain to actions of the trustee while administering the estate; (2) the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity; (3) the movants or proposed plaintiffs are seeking to surcharge the trustee personally or to recover from the estate; and (4) the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct? *Beck*, 421 F.3d at 976.

While *Beck* is not, of course, binding on this court, this recitation would be helpful … if the *Barton* doctrine applied. It does not.

B.    The Bankruptcy Court as Trial Court

The *Barton* doctrine does not apply to this matter as the Kraft Parties are not seeking to sue the Trustee in another court. Nothing in *Barton* or *Linton* or any of the foregoing stands for the proposition that a party cannot sue a trustee in the bankruptcy court itself. *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 5 (1st Cir. 1999) (*Barton* has no "application to proceedings in the court that is overseeing administration of the bankruptcy estate"); *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 885 (B.A.P. 9th Cir. 1995) ("[L]eave to sue the trustee is required to sue in those federal courts other than the bankruptcy court which actually approves the trustee's appointment."); *CERx Pharmacy Partners, LP v. RPD Holdings, LLC (In re Provider Meds, LP)*, 514 B.R. 473, 475-77 (Bankr. N.D. Tex. 2014); *cf. Linton*, 136 F.3d at 546 ("But a simpler and more secure protection is to require the person wanting to *bring a suit in state court* against a trustee in bankruptcy to obtain leave to do so from the bankruptcy court.") (emphasis added); *Nutmeg Grp.*, 2012 WL 3307406, at *2 ("The *Barton* Doctrine does not bar the … petitioners' complaint since they intend to file it here in the appointing court.").

Why would it? There is no usurpation of the bankruptcy court's power if the suit is brought in the bankruptcy court itself. The integrity of the bankruptcy court's jurisdiction is preserved. Litigation in the bankruptcy court—the appointing court—also means that the court overseeing the bankruptcy estate remains in a position to both monitor the suit's effect on the trustee's work and oversee the suit's potential effect on the bankruptcy estate.

If the suit is brought in the bankruptcy court, the bankruptcy court need not rely on the *Barton* doctrine to control the matter. It can use both its inherent and statutory power to determine how or if the suit before it should proceed. *See, e.g.*, 11 U.S.C. § 105(a) (the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Radio Corp. of Am. v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1954) (same); *see also Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 411 (1995) ("[W]e have long recognized that courts have inherent power to stay proceedings."). In exercising that power, the bankruptcy court can balance the hardship on the plaintiff seeking redress against a trustee with the needs of those dependent on the trustee's performance of her duties.

Put another way, "[w]hen a party sues the trustee in the same bankruptcy court that appointed her trustee, it reinforces rather than undermines [*Barton*'s] goals." *marchFIRST*, 2008 WL 4287634, at *2. For the same reason, a bankruptcy court's exercise of its authority under the *Barton* doctrine is simply a denial of a forum, not a resolution of the matter itself. *Cf. Beck*, 421 F.3d at 976 (wherein the enumerated factors for deciding whether to permit a *prima facie* case to proceed, paraphrased above, make clear that the decision has to do with the bankruptcy court's control of the issues, not the ultimate resolution of those issues).

For these reasons, the *Barton* doctrine simply does not apply here.

C.      Jurisdiction, Not Immunity

While that could be the end of it, it should be noted that in defending against the Motion, the Trustee here has laid a claim to "quasi-governmental immunity."

While, as the *Beck* case makes clear, the existence of an immunity defense is a factor to consider when the bankruptcy court determines whether or not to allow a *prima facie* case against a trustee to proceed in a foreign court, here, where the *Barton* doctrine does not apply, that defense is premature.

As the *Barton* doctrine operates as an obstacle for parties wishing to sue a bankruptcy trustee, it may be mistaken for a kind of trustee immunity. The Trustee here understandably confuses the two here. The *Barton* doctrine is not a form of immunity, however. *See J&S Props.*, 545 B.R. at 98 (comparing the two). The *Barton* doctrine gives an appointing court the authority to govern jurisdiction over suits. *Barton*, 104 U.S. at 136. It is not a form of immunity in and of itself. *J&S Props.*, 545 B.R. at 98 ("Simply stated, the *Barton* doctrine does not shield trustees from lawsuits. Rather, the doctrine requires the bankruptcy court to determine *where* the suit may be brought, not *whether* the trustee may be sued.").

Jurisdiction is a gating question which requires a court to make a determination whether the suit is to proceed or whether jurisdiction should be withheld. Immunity, on the other hand, is an affirmative defense. *Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705, 711 (7th Cir. 2013) (describing immunities as being "personal defenses"). The merits of affirmative defenses are determined on a motion to dismiss. *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997). While the existence of an immunity defense might play into a bankruptcy court's weighing of a matter under the *Barton* doctrine, *see, e.g., Beck*, 421 F.3d at 976, as the trial court, the bankruptcy court itself can make the immunity determinations at the appropriate stage of litigation.

When the bankruptcy court is the trial court, it is neither necessary nor appropriate to consider the immunity defense at any time other than what is ordinarily appropriate. The court need not make any ruling on such a defense now. That will be considered in due course as the matter proceeds, if such a defense is raised at the proper procedural juncture.

CONCLUSION

Because the *Barton* doctrine is inapplicable to matters tried in the bankruptcy court itself, the remaining arguments of the Kraft Parties need not be reached here. In turn, the court need not reach the Trustee's immunity claims at this point. Because the bankruptcy court will be the trial court in this matter, it can consider that defense when and if raised. As a result, the Motion serves

no purpose. As noted above and for the foregoing reasons, the Motion will therefore be denied as unnecessary.

A separate judgment order to that effect will be issued concurrent with this Memorandum Decision.

Dated: April 26, 2018

_____
Timothy A. Barnes
United States Bankruptcy Judge